UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard Nathaniel MATTAROLO,
Defendant–Appellant.

No. 98–10395.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1999.

Opinion Withdrawn April 17, 2000.

Filed April 17, 2000.

Timothy L. Zindel, Assistant Federal Public Defender, Sacramento, California, for the defendant-appellant.

Samantha S. Spangler, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellee.

Before: WOOD, Jr.,* KOZINSKI and RYMER, Circuit Judges.

## ORDER

Appellant, Richard Nathaniel Mattarolo, requests the Court to recall its mandate and vacate and reissue the amended deci-

sion in this case filed December 30, 1999, for the reason that his counsel, an assistant federal defender, admittedly neglected to file a timely Petition for Certiorari with the United States Supreme Court on his behalf after requested to do so by the Appellant.

The Opinion filed August 27, 1999, and amended December 30, 1999, is withdrawn and the mandate issued herein is recalled. A new Opinion is filed simultaneously with this Order. The mandate shall reissue forthwith. No petitions for rehearing will be entertained.

## OPINION

HARLINGTON WOOD, Jr., Circuit Judge:

Defendant Richard Mattarolo appeals his conviction and sentence for possession with intent to distribute methamphetamine and for possession of a listed precursor chemical. The principal issue is the validity of the defendant's 1996 traffic stop and the scope of the search that followed which led to his arrest and conviction. The district court held an evidentiary hearing on the defendant's motion to suppress the evidence seized at the traffic stop and denied it. After subsequently being found guilty by a jury, the defendant appeals, challenging the denial of his motion to suppress and raising several other less substantial issues.

■ Both the arresting officer and the defendant testified at the suppression hearing. The district judge found Officer Brian Banning's testimony credible but not the defendant's. Officer Banning was a fourteen-year veteran of the Sacramento County Sheriff's office, most of that time spent on patrol. He had experience on a "high impact patrol team" funded by a federal grant for crime suppression. He had also served as a police instructor. We review a district court's factual findings at

---

* The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

a suppression hearing for clear error and its application of the law *de novo. United States v. Kemmish,* 120 F.3d 937, 939 (9th Cir.1997). Finding no clear error, we accept the district court's ultimate finding of facts, though largely disputed by the defendant. Those factual findings, in our view, are clearly supported even by the cold suppression hearing transcript we have reviewed.

On April 10, 1996, about midnight, Officer Banning was in his marked squad car along a county road he described as a "pretty dark secluded road." When the officer first saw the defendant's pickup truck it was nosed into the driveway of a fenced construction storage area, the gate to which was closed. The defendant was backing out of the driveway with a three-foot square crate, not a solid box, in the back of his pickup. Inside the crate's frame the officer could see something unidentifiable wrapped in plastic. Officer Banning was familiar with that construction yard. At that hour of the night there was no business activity. It was not the customary time for pickups or deliveries. When the pickup truck backed away and proceeded down the road, Officer Banning followed. By his radio he checked to see if the truck had been stolen. Before receiving an answer, however, the officer stopped the defendant as he was suspicious that some type of criminal activity was taking place at that nonbusiness hour on that secluded road. He knew there were crated items in the storage yard though secured by a fence. He considered the fence, however, easy to breach. In that immediate vicinity Officer Banning had previously been involved in the recoveries of stolen cars, drug arrests, and arrests involving guns and burglaries.

As soon as the officer initiated the stop, the defendant immediately got out of his truck and walked swiftly back toward the squad car instead of waiting for the officer as is customary during traffic stops. The officer got out of his squad car and asked the defendant to stop where he was, which the defendant did near the left front fender of the squad car. The officer asked the defendant if he had a gun, and the defendant responded he did not. The officer then asked if the defendant would object if he "checked him real quick," to which the defendant responded "go ahead." The officer directed the defendant to turn around and face toward his truck so he could pat him down. The officer's "patdown" consisted of a brushing past the defendant's chest area with the flat of his hand looking primarily for a shoulder holster. He patted down the defendant's waist band and then the pockets of his sweat jacket and pants, but without inserting his hands. He noted a cigarette package, as he had seen several guns small enough to conceal in one of those. The next item of concern was in the defendant's left front pants pocket which the officer discovered as he pressed his hand against the defendant's pant leg. He described the object as a couple of inches long and about an inch in circumference. To determine if it might be a small pocket knife he closed his thumb and forefinger around it to see whether it was hard, suggesting a possible knife. Instead of anything hard he felt little chunks in plastic bags which he immediately recognized as drugs. He specifically denied that he moved his finger and thumb back and forth so as to manipulate the package to help identify the contents as drugs. He recognized the contents as drugs, he explained, because of the distinctive feel and his experience gained from thirty to forty patdowns in which drugs were found in people's pockets. The defendant at that moment started to swing around towards the officer, but the officer told him to "calm down," and then he went ahead and finished the patdown. The officer was concerned as it appeared that the defendant might fight or run. When requested, the defendant with shaking hands gave the officer his driver's license which was determined to be valid. The defendant's speech and demeanor, in the officer's opinion, showed extreme nervousness. The officer's backup arrived.

The defendant was asked if he had anything illegal in his pockets. When the

defendant denied anything illegal the officer asked if the defendant would mind if the officer checked for himself. The defendant's response was, "Sure, go ahead." The officer started to reach into the defendant's pocket where he had detected the narcotics, but the defendant quickly pushed the officer's hand away saying, "No, no." The defendant then reached in his own pocket and appeared to be trying to rearrange the objects in his pocket from top to bottom. He then pulled out a wad of bills, saying that that was all there was in the pocket. The officer again patted the outside of the defendant's pocket and determined that the drug package was still there. The officer described the defendant as seeming even more nervous, which caused the officer to believe the defendant might bolt and run. To avoid a fight, the officer handcuffed the defendant.

The officer next reached into the defendant's pocket and retrieved the drugs, while the defendant was claiming he could not be searched because the officer was violating his rights. The defendant then claimed the drugs were only for his personal use. It was later determined that the defendant had with him and in his truck about 260 grams of methamphetamines and 90 grams of ephedrine. No gun was discovered.

The motion to suppress was denied. A jury verdict found the defendant guilty, and he was sentenced to a total concurrent sentence of 264 months imprisonment.

## ANALYSIS

■ As previously noted, the principal issue is the validity of the traffic stop and the patdown search which followed. The defendant had already been through part of this legal routine growing out of this same incident when he first failed in a preliminary hearing in a state court prosecution to have the search evidence suppressed. The defendant had been held for state trial on the drug charges, but the state charges were dismissed in favor of this federal prosecution. In this prosecution, the district court denied the defendant's motion to suppress the same evidence on the same grounds as had the state court, and which we now examine. We must analyze the stop and the frisk separately and determine the reasonableness of each independently. *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988).

### A. The Vehicle Stop

■ We view the above recitation of the facts, including the time of night, the neighborhood, and the truck with the crate leaving the construction site, to be sufficient to cause an experienced officer to reasonably conclude that criminal activity might be in progress. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A *Terry* investigative stop is justified if the officer has an objective basis for his suspicions based on all the circumstances. It is not a matter of hard certainties, but of probabilities. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). However, that standard requires more than an officer's "hunch," even a hunch that later turns out to be a good one. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868. A preponderance of the evidence to show proof of wrong doing is not realistically required at this stage. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Reasonable suspicion therefore can arise from information different in quality and content and even less reliable than that required for the establishment of probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The officer's training and experience are factors to consider in determining if the officer's suspicions were reasonable. *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996).

We see no basis under all these circumstances why an experienced officer could not and should not temporarily stop the defendant to resolve any possible ambiguity in the defendant's conduct. Had Officer Banning not acted and it had later turned out that the officer had personally wit-

nessed a robbery in progress, the officer would no doubt have had a difficult time trying to explain to his superiors his inaction in the face of all the suspicious circumstances he had witnessed.

B. The Patdown Search

■ In *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), it was made clear that an officer may conduct a limited protective search for concealed weapons if there is a reason to believe the suspect may have a weapon. *See also United States v. Flippin,* 924 F.2d 163, 166 (9th Cir.1991). The officer must choose between being sure that the suspect is not armed and jeopardizing his own safety. An officer making a stop under the suspicious circumstances of the present case who failed to patdown the suspect for weapons within the limited scope of *Terry* could be taking substantial and unnecessary risks.

■ The defendant sees these particular circumstances otherwise, relying largely on *United States v. Thomas,* but *Thomas* and the present case are dissimilar. In *Thomas,* the stop was in a bank parking lot during the daylight hours, 863 F.2d at 624, not on a remote section of road at midnight. Thomas was a suspected counterfeiter, *id.,* not a suspect caught possibly in the act of committing a nighttime burglary and therefore more likely to be armed. While Thomas got out of his car and walked toward the approaching officer, *id.,* the defendant got out of his car swiftly and walked quickly toward the squad car before the officer had the chance to get out of his car. The defendant's swift approach caused the officer to get out of his squad car quickly so as not to be trapped with the means of protecting himself consequently limited. Given the totality of the circumstances, the patdown search was fully justified under *Terry* and a provident procedure to follow.

■ Having determined that the patdown was justified, the next question is whether the officer exceeded the scope of *Terry* by the manner in which he conducted the patdown. *Terry* allows for a limited search of a suspect's person in order for the officer "to determine whether the person is in fact carrying a weapon." *Terry,* 392 U.S. at 24, 88 S.Ct. 1868. The district court accepted Officer Banning's testimony that during the patdown he felt, with the flat of his hand, a cylindrical object several inches long in the defendant's pocket. The object was large enough that it could have been a pocket knife, and the officer pressed it between his thumb and forefinger in order to make sure this was not the case. The possibility of a surprise attack at close quarters with even a small knife presents danger sufficient to justify an officer in taking reasonable protective measures, and such a precautionary squeeze is well within the scope of *Terry.*

■ Had the officer continued to manipulate the object beyond what was necessary to ascertain that it posed no threat, he would have run afoul of the Supreme Court's holding in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The district court, however, believed Officer Banning that he did not seek to manipulate the object, but was nevertheless alerted immediately to the presence of drugs by the familiar sensation of plastic sliding against a granular substance. Once the presence of the drugs became known in this manner, they could be seized without the defendant's consent pursuant to a tactile variation on the "plain-view" rule. *See id.* at 375, 113 S.Ct. 2130. As contraband seized incident to a lawful *Terry* search is admissible, *see Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the district court did not err in refusing to suppress the evidence.

C. Remaining Issues

■ The remaining issues raised by the defendant are all without merit and need be dealt with only briefly. First, the defendant questions the sufficiency of the evidence with respect to his conviction under 21 U.S.C. § 802 for knowingly possess-

ing ephedrine, a listed precursor chemical, with reasonable cause to believe that the chemical would be used to manufacture methamphetamine. The ephedrine was found in a red bag during the search of the truck. The defendant asserts that the record is devoid of any evidence that he knew there was ephedrine in the red bag or that he knew ephedrine could be used to manufacture methamphetamine. We must view the evidence in the light most favorable to the government, *United States v. Winslow*, 962 F.2d 845, 850–51 (9th Cir.1992), and sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Among the items seized from the red bag was a note described as "a partial recipe for methamphetamine." The red bag also contained a pager which the defendant admitted was his, and there was testimony at trial that one of the defendant's fingerprints was found on some plastic inside the red bag. Also found in defendant's possessions were packaging materials, a razor blade, scales, and large sums of cash in small denominations along with quantities of the drugs. Those materials indicated possession of drugs for distribution, not personal use as the defendant claimed. The evidence of guilt was more than sufficient.

■ Further, the defendant questions the district court's application of the sentencing guidelines. Again the defendant has a substantial burden. Although we review *de novo* the district court's interpretation and application of the guidelines, *United States v. Garcia–Camacho*, 122 F.3d 1265, 1267 (9th Cir.1997), we will uphold the district court's factual findings used to support a sentencing enhancement absent clear error. *United States v. Garcia–Guizar*, 160 F.3d 511, 524 (9th Cir. 1998).

■ The district court imposed a two-level enhancement in the defendant's base offence level for obstruction of justice under U.S.S.G. § 3C1.1 which provides:

"If the defendant willfully obstructed and impeded or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." Because the defendant objected to the enhancement, the district court was required to determine that the defendant's perjured testimony was intentional and not resulting from "confusion, mistake or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). The enhancement grew out of the defendant's alibi defense that the truck in which he had been stopped belonged to another person and had been left with the defendant to use. The defendant claimed that the evidence found in the truck did not belong to him, and that he did not know what was in the bag. The jury found that the defendant knew what was in the bag, and the district judge agreed. In fact, when the defendant tried to elaborate on the alibi in his trial testimony, he ended up contradicting himself. The district court found the defendant's alibi evidence material, but false and willful as well. This factual finding is supported by the record and is sufficient to support the conclusion that the defendant testified falsely.

■ The defendant further contends that the district court erred in considering, at sentencing, evidence that he knew methamphetamine was being manufactured on his property. This evidence did not result from the *Terry* stop, but had been obtained on November 1996 by a state investigator following up on a citizen's complaint that a "chop shop" was being operated at the defendant's residence. During the state search, Ronald Patton was met coming out of a methamphetamine laboratory secreted on the defendant's property. After being given his Miranda rights, Patton confessed. Upon issuance of a search warrant, extensive searches of the property revealed the suspected chop shop and drug operations. Those details need not be further reviewed, but none of it was favorable to the

defendant. The defendant had also been the subject of an inspection in 1989, at which time five stolen vehicles and a clandestine methamphetamine laboratory were discovered. In 1992, during a probation investigation of the defendant's property, state officers found another methamphetamine laboratory in operation and various dismantled vehicles. The evidence had been excluded at trial, but was admitted during sentencing as demonstrating a course of conduct.

 The district judge carefully considered the admissibility of some of this additional evidence for sentencing purposes only. It was supported by Patton's testimony, now cooperating with the government, that he had worked in the defendant's laboratory. A district court may consider evidence ruled inadmissible at trial in determining relevant conduct at sentencing. *United States v. Kim,* 25 F.3d 1426, 1432–33 (9th Cir.1994). We find the defendant's objections to the use of this additional evidence for sentencing purposes to be without merit.

 Patton for his cooperation was promised leniency by the government which leads to the next issue. The way the government secured Patton's testimony violated 18 U.S.C. § 201(c)(2), the defendant claims. That section prohibits giving valuable consideration in exchange for testimony. The defendant relies on *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), which was rejected by the Tenth Circuit en banc, *United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999) (en banc), and has been firmly rejected by other circuits. *See United States v. Flores,* 172 F.3d 695, 699–700 (9th Cir. 1999) (collecting cases). *See also United States v. Mitchell,* 178 F.3d 904, 909 (7th Cir.1999).

We find no merit in any of the defendant's contentions and therefore affirm the district court in all respects.