Filed 1/21/15  P. v. Nelson CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>KATRELL NELSON,<br><br>     Defendant and Appellant. | B254197<br><br>(Los Angeles County<br>Super. Ct. No. BA411757) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, William N. Sterling, Judge.  Affirmed.

        Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jonathan J. Kline and Jonathan M. Krauss, Deputy Attorneys General for Plaintiff and Respondent.

_____

A woman waved down police officers, who followed her to a parked car in which Katrell Nelson was sitting. After Nelson was ordered out of the car, an officer conducted a pat search, discovered cocaine in Nelson's pocket and arrested him. Following the denial of his motion to suppress evidence, on February 5, 2014 Nelson pleaded no contest to possession of cocaine (Health & Saf. Code, § 11350, subd. (a)), a felony,[1] and admitted he had served three separate prison terms for felonies (Pen. Code, § 667.5, subd. (b)).[2] On appeal Nelson concedes he was lawfully detained and subjected to a protective pat search under *Terry v. Ohio* (1968) 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (*Terry*). However, he contends the scope of the search was unlawful and the cocaine found in his pocket should have been suppressed. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

While driving with his partner on patrol, Los Angeles Police Officer Onam Urena saw a woman crying and running toward his car, signaling him for assistance. After alerting Urena and his partner, the woman walked back toward her parked car and opened the rear passenger door. Urena, who had stopped the patrol car and approached the woman's vehicle, saw Nelson sitting in the back seat. An infant was next to him.

Believing he had encountered a scene of domestic violence, Officer Urena ordered Nelson out of the car. As Nelson came out of the car, he was holding the infant with his

---

[1]     Proposition 47, approved by the voters on November 4, 2014, amended Health and Safety Code section 11350, subdivision (a), as of November 5, 2014, to provide in most instances that possession of a controlled substance is a misdemeanor, not a felony. Proposition 47 also contains a resentencing provision, new Penal Code section 1170.18, which permits a person currently serving a sentence for a felony that is now a misdemeanor under the provisions of Proposition 47 to petition for a recall of sentence and resentencing. We do not consider what effect Proposition 47 may have on Nelson's conviction and sentence.

[2]     The trial court suspended imposition of sentence and placed Nelson on one year of formal probation on condition he complete a drug treatment program pursuant to Penal Code section 1210.1 (Proposition 36).

2

left hand and had his right hand in his right front pants pocket. Urena was concerned there was a weapon in Nelson's pocket. Urena ordered Nelson to give the baby back to the woman and to put his hands behind his back. Urena handcuffed Nelson and then conducted a pat search for weapons.

Officer Urena testified in performing the pat search he used what he called the "spider crawl" method he had learned at the police academy, which consists of a systematic neck to shoes search of the suspect during which the officer "grabs and manipulates" the suspect's clothing to locate any hidden weapons. Urena explained officers are also trained to be alert to the presence of nonthreatening items of contraband they may feel during the pat search. When Urena reached Nelson's right front pocket, he "felt a squishy item, probably the size of a golf ball," that the officer immediately recognized as narcotics based on his training and experience.

At this point in Officer Urena's suppression hearing testimony, the trial court asked, "That is when you were just patting the outside?" The office replied, "Yes, Sir." The court next asked, "[W]hat you felt when you were just patting it down before you manipulated it, was it consistent with what you have experienced in the past to be narcotics?" Again the officer responded, "Yes, Sir." The following exchange then took place:

"[The Court]: Can you describe how and why it was consistent with narcotics?

"[The Witness]: Usually when people hide or conceal items, narcotics, they keep it in their pockets and usually, they will put keys, cell phone—it's more of a hard object. Something squishy like that and small—people usually hide and conceal it in their pockets.

"[The Court]: When you say squishy and small, when you patted it, did it seem to change shape?

"[The Witness]: Once I did a spider crawl, it is more of groping the area and making sure there were no guns, and yes, it felt like it was changing shape.

"[The Court]: Were you doing that in order to see if there was a weapon?

3

"[The Witness]:  Yes, Sir.

"[The Court]:  When it changed shape, was that consistent with what you have experienced in the past to be narcotics?

"[The Witness]:  Yes, Sir."

On cross-examination Officer Urena testified the spider crawl entails "squeezing the outer clothing from the neck to the shoes."  Nelson's counsel asked, "When you were in the course of this spider crawl, when you were squeezing Mr. Nelson's pockets, you felt that squishy substance that you described to us earlier?"  Urena answered, "Yes, Sir," and confirmed the substance he then retrieved from Nelson's right front pocket was powder cocaine.

Nelson did not testify at the suppression hearing.  Following the presentation of evidence, Nelson's counsel argued the cocaine should be suppressed because, among other reasons, the manner in which Officer Urena conducted the pat search exceeded the permissible scope of a *Terry* search.

The trial court denied the suppression motion, concluding, (a) Officer Urena reasonably detained Nelson to conduct an investigation of potential criminal activity; (b) Urena reasonably believed that Nelson might have a weapon and, therefore, was justified in conducting a *Terry* pat search to ensure his safety; and (c) Urena's method of systematically squeezing or grasping a suspect's clothing to detect small, easy-to-conceal weapons was not constitutionally unreasonable.  Because Urena immediately recognized the object in Nelson's pocket as a controlled substance, the officer had probable cause to retrieve it and to arrest Nelson for possession of cocaine.  The court explained Urena would have exceeded the permissible scope of a *Terry* search had he grasped the object, not immediately recognized it and continued to manipulate the object to determine what it might be.  However, based on Urena's testimony the court concluded that had not happened.

## DISCUSSION

1. *Standard of Review*

4

In reviewing the ruling on a motion to suppress, the appellate court defers to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. James* (1977) 19 Cal.3d 99, 107.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*James*, at p. 107.) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.)

2. *Governing Legal Principles*[3]

When a police officer reasonably suspects a crime has been committed and the individual he or she has detained may be armed and dangerous, the officer may "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (*Terry, supra*, 392 U.S. at p. 31.) "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." (*Adams v. Williams* (1972) 407 U.S. 143, 146 [92 S.Ct. 1921, 32 L.Ed.2d 612].) The officer's search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." (*Terry,* at p. 26.) If the protective search goes beyond what is needed to determine whether the suspect is armed, it is no longer lawful; and the fruits of such a search must be suppressed. (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373 [113 S.Ct. 2130, 124 L.Ed.2d 334] (*Dickerson*); *Sibron v. New York* (1968) 392 U.S. 40, 65-66 [88 S.Ct. 1889, 20 L.Ed.2d 917].)

Officers conducting a proper protective search, however, are not limited to seizing only weapons they discover. So long as the officers' search stays within the bounds marked by *Terry*, police officers may seize nonthreatening contraband they have

---

[3] Whether relevant evidence obtained by assertedly unlawful means must be excluded is determined exclusively by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const., art. I, § 28, subd. (f)(2); *People v. Lenart* (2004) 32 Cal.4th 1107, 1118.)

detected. (*Dickerson, supra*, 508 U.S. at p. 373.) "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Id.* at pp. 375-376; accord, *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1237; see *People v. Limon* (1993) 17 Cal.App.4th 524, 536 [once officer believes a concealed object is not a weapon, the officer "cannot continue to palpate the object without probable cause to search the suspect"].)

In *Dickerson, supra*, 508 U.S. 366, the police stopped the defendant as he was leaving a building known for cocaine traffic because he had acted in an evasive manner when he saw them. (*Id.* at pp. 368-369.) A pat search revealed no weapons, but the investigating officer felt a "small lump" in defendant's pocket. (*Id.* at p. 369.) The officer did not immediately suspect the lump was contraband but examined it further and, according to the state courts' findings, "determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." (*Id.* at p. 378.) The Supreme Court held the crack cocaine seized from defendant's pocket was the product of an unlawful search, concluding, under those circumstances, "the police officer in this case overstepped the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*." (*Ibid.*) The Court emphasized that, "[a]lthough the officer was lawfully in a position to feel the lump in [defendant's] pocket," the further search was constitutionally invalid because "the incriminating character of the object was not immediately apparent . . . ." (*Id.* at p. 379; see, e.g., *United States v. Miles* (9th Cir. 2001) 247 F.3d 1009, 1014-1015 [officer conducting protective pat search "reached the outer limits of his patdown authority" when, after feeling a small box in the suspect's pocket, "it was clear that the object . . . could not possibly be a weapon"; because the officer did not immediately recognize the box as contraband, "the officer's further manipulation of the box was impermissible"].)

6

### 3. *The Motion To Suppress Was Properly Denied*

Based on Officer Urena's testimony, the trial court found that, upon feeling the small, squishy object in Nelson's pocket, it was immediately apparent to Urena—based not only on the feel of the item but also on his training and the location where the encounter took place, which was known as an area with frequent drug transactions—the item was contraband ("narcotics"). Under the deferential substantial evidence standard that governs our review, we accept the court's factual finding. The question remains, however, whether Urena's use of the spider crawl search method—and specifically the fact Urena gripped, rather than simply patted, the outside of Nelson's pocket area—stayed within the bounds of a lawful *Terry* search.

Contrary to Nelson's contention, the validity of a protective search for weapons to ensure officer safety does not turn on the subtle distinction between a "pat" and a "squeeze." (See, e.g., *United States v. Mattarolo* (9th Cir. 2000) 209 F.3d 1153, 1156, 1158 [to determine if the small object in a suspect's pocket might be a pocket knife, the officer closed his thumb and forefinger around it to see whether it was hard; instead the officer felt chunks in plastic bags that he immediately recognized as drugs; held: "such a precautionary squeeze is well within the scope of *Terry*"]; *United States v. Rogers* (2d Cir. 1997) 129 F.3d 76, 79 [although officer manipulated object in suspect's coat pocket for "a few seconds" to determine what it was, "the search was still within the bounds of *Terry*"].) The constitutional infirmity identified in *Dickerson* was not the type of touch employed but "the officer's continued exploration of [the suspect's] pocket after having concluded that it contained no weapon." (*Dickerson, supra*, 508 U.S. at p. 378.) The Supreme Court explained the continued manipulation of the small object discovered by the officer "was unrelated to 'the sole justification of the search [under *Terry*:] . . . the protection of the police officer and others nearby.'" (*Ibid*.) It was the duration of the external search that prompted the Court's concern, not simply the manipulation of the suspicious object. (See *United States v. Yamba* (3d Cir. 2007) 506 F.3d 251, 259 [the proper question "is not the immediacy and certainty with which an officer knows an object to be contraband or the amount of manipulation required to acquire that knowledge

but rather what the officer believes the object is by the time he concludes that it is not a weapon"]; see also *People v. Lee* (1987) 194 Cal.App.3d 975, 985 ["in order to rule out the presence of a weapon, the officer may have to determine an object's 'weight and consistency'"].)

The facts as found by the trial court here are distinguishable from the situation in *Dickerson* because Officer Urena had to squeeze the object in Nelson's pocket to dispel his suspicion it was a weapon and, simultaneously with that act, the officer developed probable cause to arrest Nelson for possession of a controlled substance. As explained by Urena at the suppression hearing, the spider crawl method of pat search was limited to the outside of Nelson's clothing and was employed solely to determine if Nelson had a weapon in his pocket:

"[The Court]: . . . Officer, when you patted his pocket that had the substance you recovered, were you able to feel that squishy feeling the first time you patted the object?

"[The Witness]: Yes, Sir.

"[The Court]: And was it by grasping it or just patting?

"[The Witness]: It was more of a grasp. The spider crawl is considered a grasp, you could say.

"[The Court]: Is that because there might be weapons other than firearms that you would need to grasp in order to recognize?

"[The Witness]: Yes, like knives."

The record supports the trial court's findings as to the nature of Officer Urena's protective search and his identification of the substance as contraband while still trying to determine whether it was a weapon. The motion to suppress was properly denied.

8

**DISPOSITION**

The judgment is affirmed.

                                                  PERLUSS, P. J.

We concur:

        WOODS, J.

        FEUER, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9